**Cherlynn M. MARTIN and Tina Fuhrman, individually and as members of Petitioners' Committee for Referendum on City of Reading Ordinance No. 43–2004, Appellants**

v.

**Linda A. KELLEHER, in her capacity as City Clerk of the City of Reading, Pennsylvania and City of Reading, Pennsylvania.**

Commonwealth Court of Pennsylvania.

Argued Dec. 13, 2005.

Decided Feb. 16, 2006.

J. Jackson Eaton, III, Allentown, for appellant, Cherlynn M. Martin.

Charles D. Younger, Reading, for appellee.

BEFORE: PELLEGRINI, Judge, and COHN JUBELIRER, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

Cherlynn M. Martin and Tina Fuhrman, individually and in their capacity as members of the Petitioners' Committee for Referendum on City of Reading Ordinance No. 43–2004, (collectively Petitioners), appeal from an order of the Court of Common Pleas of Berks County (trial court) which denied and dismissed Petitioners' complaint in mandamus. We reverse.

On October 11, 2004 Reading City Council adopted Ordinance No. 43–2004, which requires pre-settlement home inspections for all residential properties sold or transferred in the City of Reading (City) and sets forth the fees for the inspections. On October 13, 2004, the mayor signed Ordinance No. 43–2004 into law.

Thereafter, Petitioners and others, who totaled five individuals, established a Committee in order to initiate a referendum on City of Reading Ordinance No. 43–2004 pursuant to the City of Reading Home Rule Charter (Charter), Article XI, §§ 1102 through 1109. Section 1102 of the Charter provides:

(b) Referendum. The qualified voters of the City shall have the power to require reconsideration by the Council of any adopted ordinance. If the Council fails to repeal an ordinance so reconsidered, the Referendum process may be commenced giving the qualified voters of the City the opportunity to approve or reject said ordinance at a City election.

On October 20, 2004, the Committee filed with Linda A. Kelleher, in her capacity as City Clerk (City Clerk), an affidavit which is required by § 1103(a) of the Charter. Section 1103(a) of the Charter provides:

(a) Any five (5) qualified voters of the City may commence ... referendum proceedings by filing with the City Clerk an affidavit stating they will constitute the Petitioners Committee and be responsible for circulating the petition and filing it in proper form, stating their names and addresses and specifying the address to which all notices to the committee are to be sent, and setting forth in full the proposed initiative ordinance or citing the ordinance sought to be reconsidered. In case of Referendum, such an affidavit must be filed within ten (10) days of the adoption of the ordinance. Within five (5) days after the affidavit of the Petitioners Committee is filed and validated, the City Clerk shall issue the appropriate petition blanks to the petitioners.

In a certified letter dated October 25,

2004[1], the City Clerk informed the Committee that the affidavit was invalid because it did not comply with § 1103(a) of the Charter. Specifically, the letter stated that the "wording and content of the affidavit ... did not identify the undersigned as 'qualified voters'" as is required by § 1103(a) of the Charter. Because the affidavit was invalid, the City Clerk also refused to issue to the Committee the "appropriate petition blanks" contemplated by § 1103(a) of the Charter.

Thereafter, the Committee created its own Charter compliant referendum petitions. The petitions were circulated for signature and completion of an affidavit by each circulator. The petitions, which contained approximately 4,800 signatures, were presented to the City Clerk for filing on November 19, 2004.[2] The City Clerk, however, refused to accept the petitions. On November 22, 2004, the Committee attempted to present the petitions directly to City Council at a public meeting. After a vote, City Council refused to accept the petitions.

On December 20, 2004, Petitioners filed a complaint in mandamus seeking to compel the City Clerk to accept the affidavits and referendum petition. On January 18, 2005, City filed preliminary objections alleging two bases for dismissing the compliant. On February 5, 2005, Petitioners filed a motion for peremptory judgment.

■ In an order dated May 4, 2005, the trial court overruled the City's preliminary objections. Additionally, the trial court denied Petitioners' motion for peremptory judgment finding that although the affidavit was technically sufficient under the terms of § 1103(a), the affidavit was nonetheless legally insufficient because the affidavit did not declare that the members of the Committee were qualified voters of the City as is required by the Pennsylvania Election Code (Election Code)[3]. On June 25, 2005, the trial court referencing its May 4, 2005 order, denied and dismissed Petitioners' complaint in mandamus. This appeal followed.[4]

Petitioners argue that they have complied with the requirements of the Charter and the trial court erred in applying Sections 908 and 909 of the Election Code, 25 P.S. §§ 2868 and 2869 to the Committee affidavit. We agree.

■ Section 1103 of the Charter does not require a written declaration stating that the members of the Committee are qualified voters. The trial court acknowledged as much and additionally stated that the Charter only requires that members of the Committee be qualified voters, but does not require a statement to that effect. Furthermore, as the trial court observed, the City did not dispute that the five members who signed the affidavit were, in fact, qualified voters of the City of Reading. (Trial court opinion at p. 10). Here, the affidavit contained all of the requirements listed in § 1103. Specifically, it listed the Committee members' names and addresses, set forth the address to which all notices should be sent and cited the ordi-

---

1. The expiration date for filing referendum affidavits was October 23, 2004.

2. Section 1104 of the Charter provides that referendum petitions must be filed within 35 days after the filing of the affidavit of the Petitioner's committee.

3. Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. §§ 2600–3591.

4. City has not appealed the trial court's decision to overrule the preliminary objections. This court's review is limited to determining whether the trial court abused its discretion or committed an error of law. *Frisch v. Penn Township*, 662 A.2d 1166 (Pa.Cmwlth.1995).

nance sought to be reconsidered. Given that Petitioners complied with § 1103, the trial court erred in refusing to issue mandamus to the City Clerk to accept the Committee affidavit.

■ We also agree with Petitioners that the trial court erred in extending the requirements of the Election Code, namely 25 P.S. §§ 2868 and 2869 to the Committee affidavit at issue.[5] Specifically, the trial court determined that in accordance with the Election Code, an affidavit submitted in accordance with § 1103(a) must contain a declaration that the signing members of the Committee are qualified voters of the City. The trial court relied on *Harrisburg Sunday Movie Petition Case*, 352 Pa. 635, 44 A.2d 46 (1945) and *Petition of Werner*, 662 A.2d 35 (Pa.Cmwlth.1995).

In *Harrisburg*, residents sought to have a question regarding the showing of motion pictures on Sunday placed on the ballot. The statute which provided for the submission of the Sunday movie question to the electorate, did not require an affidavit, but did state that the petition should be submitted in the manner provided by the election law. The Supreme Court held that the petitions were required to contain affidavits in accordance with the Election Code. The Court citing with approval the opinion of the trial court stated:

The [trial] court pertinently points out that "Only by applying the provisions of the Election Code to this determination [issue of Sunday picture shows] is an orderly procedure established. Otherwise there is nothing to regulate the form of the petitions or what they should contain." The court adds: "The provisions of the election laws relating to the form of nomination petitions, and requiring the person circulating them to swear to certain definite things, are necessary to prevent fraud. It is just as important for the petitions before us to have the names properly signed, with addresses, occupation and date of signature, to be supported by affidavit as any petition filed in accordance with the Election Code...."

In *Petition of Werner*, a resident filed protest petitions with the Board of Elec-

---

5. The provisions of 25 P.S. § 2868 state:

**Manner of signing nomination petitions; time of circulating**

Each signer of a nomination petition shall sign but one such petition for each office to be filled, and shall declare therein that he is a registered and enrolled member of the party designated in such petition.... He shall also declare therein that he is a qualified elector of the county therein named, and in case the nomination is not to be made or candidates are not to be elected by the electors of the State at large, of the political district therein named, in which the nomination is to be made or the election is to be held. He shall add his occupation and residence, giving city, borough or township, with street and number, if any, and shall also add the date of signing.... The provisions of 25 P.S. § 2869 state as follows:

**Petition may consist of several sheets; affidavit of circulator**

Said nomination petition may be on one or more sheets.... Each sheet shall have appended thereto the affidavit of the circulator of each sheet, setting forth-(a) that he or she is a qualified elector duly registered and enrolled as a member of the designated party of the State, or of the political district, as the case may be, referred to in said petition, ... (b) his residence, giving city, borough or township, with street and number, if any; (c) that the signers thereto signed with full knowledge of the contents of the petition; (d) that their respective residences are correctly stated therein; (e) that they all reside in the county named in the affidavit; (f) that each signed on the date set opposite his name; and (g) that, to the best of affiant's knowledge and belief, the signers are qualified electors and duly registered and enrolled members of the designated party of the State, or of the political district, as the case may be.

tions against a Borough ordinance which was passed, which allowed the Borough to sell its water system. Objector claimed that the petitions did not contain an affidavit in compliance with 25 P.S. §§ 2867 and 2868 of the Election Code. The trial court determined that the petitions were fatally defective because they did not contain an affidavit in compliance with the Election Code.

The resident argued that The Borough Code did not specify that protest petitions must be accompanied by an affidavit nor did The Borough Code reference the Election Code. Because she complied with The Borough Code, the resident argued that the trial court erred in holding her to the higher Election Code standard.

This court, citing *Harrisburg*, stated that affidavits are necessary to prevent fraud and to preserve the integrity of the process. Thus, even though The Borough Code did not contain an affidavit requirement, this court concluded that the Election Code's affidavit requirement was nonetheless applicable to petitions.

Presently, both *Harrisburg* and *Petition of Werner* are distinguishable because this case does not involve a nominating, referendum or initiative petition. This case concerns a Committee affidavit, which is only required by the Charter, and is merely a pre-requisite to the issuance of petition blanks by the City Clerk to the Committee.[6] The City of Reading via its Charter has established what is necessary for the referendum process to commence and Petitioners have complied with it. This case involves a Committee affidavit, which was not at issue in *Harrisburg* and *Petition of Werner*.

A straightforward reading of § 1103(a) does not require a written declaration

that the members of the Committee are qualified voters. The Charter states that "qualified voters of the City may commence initiative or referendum proceedings by filing with the City Clerk an affidavit stating that they will constitute the Petitioners Committee and be responsible for circulating the petition and filing it ... stating their names and addresses and specifying the address to which all notices ... are to be sent, and ... citing the ordinance sought to be reconsidered." Here, the affidavit stated all that was required by the Charter. Moreover, as acknowledged by the trial court, unlike *Harrisburg* and *Petition of Werner*, the affidavit in this case does not support a petition but, in fact, precedes it and is merely the basis for initiating the referendum proceeding. Thus, because the affidavit in this case preceded the petition, the requirements contained in 25 P.S. §§ 2868 and 2869 of the Election Code, which relate to the manner of signing nomination petitions and affidavit of circulator with respect to nomination petitions, are not applicable.

In this case, there is no dispute that the Petitioners are qualified voters of the City of Reading. Additionally, Petitioners have complied with the terms of the Charter. Accordingly, the decision of the trial court is reversed and the matter is remanded to the trial court to issue a writ of mandamus directing the City Clerk to accept Petitioners' affidavit and petitions.

Jurisdiction is relinquished.

### ORDER

Now, February 16, 2006, the order of the Court of Common Pleas of Berks County, in the above-captioned matter, is reversed. The case is remanded to the

---

6. Petitioners note that each of the petitions in this case contains an "affidavit of circulator" which contains all of the information required by *Harrisburg* and *Werner*.